IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BETH ADAIR )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>MORTON COMMUNITY BANK and )<br>HOMETOWN COMMUNITY BANKS )<br>)<br>**Defendants.** ) | No:  2022 CV 2053<br><br>Plaintiff Demands trial by jury |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, BETH ADAIR, by and through her attorneys, THE KREAMER LAW GROUP, LLC., and for her Complaint against DEFENDANTS, MORTON COMMUNITY BANK and HOMETOWN COMMUNITY BANKS, states as follows:

### NATURE OF THE CLAIM

1. This case seeks redress for violations of the Family Medical Leave Act and other common law theories of recovery.

### PARTIES

2. Plaintiff is a citizen of Illinois and a resident of Morton, Tazewell County, Illinois.

3. Plaintiff was at all relevant times employed by Defendant Morton Community Bank as a bank teller.

4. Defendant Morton Community Bank is a Bank doing business in Tazewell County, Illinois and throughout the Central District of Illinois.

5. Defendant Hometown Community Banks upon information and belief is the parent company of Morton Community Bank.

### JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked under 28 U.S.C. §1343(a)(3) and (4), 28 U.S.C. §1331, and 29 U.S.C. §2601. *et seq.*

7. The venue is proper in the Central District of Illinois under 28 U.S.C. §1391(b) and (d). The unlawful employment practices alleged were committed in the Central District of Illinois.

## FACTUAL ALLEGATIONS

8. Plaintiff was employed with Defendant Morton Community Bank beginning on August 8, 2016, until she was terminated unlawfully on or about March 4, 2020. Plaintiff's last position with Defendants was that of a teller.

9. At all times during Plaintiff's employment, Plaintiff performed her job to the legitimate expectations of Defendants and beyond and was over the age of 40.

10. Plaintiff had issues with her shoulder and rotator cuff tears and had surgery in 2005. Plaintiff's symptoms of pain at times limited her ability to lift or to push heavy objects, write by hand and reach up at 90-degree angles.

11. In September of 2019, Plaintiff's condition grew worse, and she continued to experience severe pain in her shoulder.

12. Plaintiff was able to perform all of her duties as a teller with these medical conditions, the only accommodations she had were to restrain from lifting coin trays, coin bags, putting substantial weight on her shoulder, storing a portion of her coin trays in an empty coin safe that was in drive up and not being assigned to the drive through because the push out drawer required a great deal of force that was difficult for Plaintiff to do with her conditions.

13. In April of 2019, a new supervisor was assigned to the tellers, and she was less accommodating to Plaintiff than her prior supervisor with respect to these restrictions.

14. On or about October 9, 2019, Plaintiff then fell in the parking lot on her way to get a signature from a customer who had just left, and suffered from a strained neck and additional injury and increased pain to her shoulder.

15. As a result of this accident while working, Plaintiff filed a worker's compensation claim on or about October 30, 2019.

16. After filing her worker's compensation claim, Plaintiff experienced escalated and continuous harassment in many ways including but not limited to: Defendants engaging in illegal acts of retaliation against Plaintiff; Defendants causing differential treatment toward Plaintiff; Defendants creating a hostile work environment; and termination.

17. On or about October 31, 2019, Plaintiff's doctor prescribed physical therapy for her, but did not indicate that she was unable to work, but that she would still just be subjected to the same restrictions as outlined above.

18. After this point, Plaintiff then worked with her supervisors to schedule her shifts around her physical therapy sessions. This was met with continued resistance by Defendants, and the HR department began telling Plaintiff that she should use FMLA leave.

19. On or about November 27, 2019, Plaintiff woke up with a lot of pain due to working a manual station the day before. The next day Plaintiff told my supervisor that the manual station exacerbated her pain and asked if she could be put on another station. Plaintiff's supervisor merely responded by saying "I don't know what you want me to say." Plaintiff replied by telling her that working one of the other stations in the front would not be as hard on her condition. There were other tellers who were willing to switch with Plaintiff.

20. On or about December 11, 2019, Plaintiff's supervisors told her they were sending her home and that she had to use her FMLA time.

21. Plaintiff told her supervisors that she did not need FMLA, and again told them that she was able to perform her job with the simple accommodations of restrictions on lifting and pushing at the manual and drive-up stations.

22. At all relevant times, other tellers or employees were able to help Plaintiff with the lifting, and were willing to work in the manual stations instead of her.

23. These accommodations did not cause, nor would they cause any detriment to Defendants.

24. During Plaintiff's forced FMLA leave, she informed her supervisors on several occasions that she was able to come back and perform all of her duties with the simple accommodations mentioned above.

25. Plaintiff complained on several occasions before and after her forced FMLA leave on the differential treatment that she was forced to endure after filing and exercising her worker's compensation rights.

26. After complaining on several occasions about this differential treatment and seeking accommodations, Plaintiff was thereafter continuously treated differently and hostile actions and harassment toward her did not resolve, but escalated.

27. On or about February of 2020, Plaintiff's conditions worsened, and she was awaiting an injection for her neck injury.

28. At that time, Plaintiff's doctor restricted her from all work until at least March 13, 2020.

29. Plaintiff's FMLA, expired on or about March 3, 2020, and she made a formal request for an extension due to the exacerbated issue regarding her neck and shoulder on February 27, 2020.

30. On or about March 4, 2020, Plaintiff received a phone call and a letter from Defendants indicated that her request for extension of FMLA was denied and that she was terminated.

31. Plaintiff complained to her supervisors that she was being terminated because of her health condition, her disability perceived or actual, her age, and her requests for reasonable accommodations.

32. Prior to this, Plaintiff stated and complained to her supervisors on several occasions that she was forced to use her FMLA time when she didn't need it, and then when her condition worsened and she did need to request and use FMLA time, and request an extension, it was denied, and Plaintiff was abruptly terminated.

33. Plaintiff has suffered and will continue to suffer significant damages as a result of the above.

34. By the above actions but not limited to the same, Defendants created an intimidating, hostile and offensive work environment, which unreasonably interfered with Plaintiff's work performance, work opportunities, and seriously affected her psychological well-being.

## COUNT I – FMLA INTERFERENCE

35. Plaintiff repeats and reasserts the allegations of paragraphs 1-34 as this paragraph as though fully set forth herein.

36. Defendants are employers covered by the Family Medical Leave Act under 29 U.S.C. §2601 *et. seq.*

37. The Defendants intentionally interfered with Plaintiff's FMLA rights by forcing Plaintiff to take and use her FMLA time when she did not need the same beginning on or about December 11, 2019.

38. The Defendants intentionally interfered with Plaintiff's FMLA rights by continuing to mandate Plaintiff to take and use her FMLA time after she made several complaints about being forced to do the same.

39. The Defendants intentionally interfered with Plaintiff's FMLA rights after her condition worsened in February of 2020 and when she actually then required the need to be off of work until March 13, 2020.

40. The Defendants intentionally interfered with Plaintiff's FMLA rights after Plaintiff's FMLA time expired on or about March 3, 2020, and she made a formal request for an extension due to the exacerbated issue regarding her neck and shoulder on February 27, 2020.

41. The Defendants intentionally interfered with Plaintiff's FMLA rights by forcing and mandating that Plaintiff use her FMLA time when she didn't need it, and then when her condition worsened and she did need to request and use FMLA time, and when she did need to request an extension, denying the same.

42. Had Plaintiff not been forced to use her FMLA time, she would not have run out of the same when she actually needed it.

43. The Defendants intentionally interfered with Plaintiff's FMLA rights by denying her request for an extension when she actually needed to use the same.

44. The Defendants intentionally interfered with Plaintiff's FMLA time after she requested an extension by abruptly terminating her on March 4, 2020.

45.  The Defendants' actions were willful and in bad faith.

46. As a result of the Defendants' FMLA interference, Plaintiff has suffered damages including but not limited to past lost wages and interest on those wages, lost benefits, liquidated damages, front pay, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, loss of ordinary pleasures of everyday life, attorney fees, and costs.

WHEREFORE, the Plaintiff, BETH ADAIR, respectfully requests judgment against Defendants in an amount that will fully compensate her for her injuries and damages caused by the Defendants' violations of her rights under FMLA and award Plaintiff all allowable damages under the FMLA, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT II - FMLA DISCRIMINATION

47. Plaintiff repeats and reasserts the allegations of paragraphs 1-34 as this paragraph as though fully set forth herein.

48. Defendants intentionally harassed Plaintiff by forcing and mandating that she use her FMLA time when she did not need it.

49. Defendants intentionally harassed Plaintiff by forcing and mandating that she use her FMLA time thus forcing her to use the same and then not have it available when she actually needed it.

50. Defendants intentionally harassed Plaintiff by forcing and mandating that she use her FMLA time when she did not need it and then denying her request for an extension when she then actually did need it.

51. Defendants intentionally harassed Plaintiff by terminating her on March 4, 2020.

52. Defendants knew or should have known that their actions were harassing Plaintiff.

53. Defendants did nothing to stop the harassment.

54. The Defendants' actions were willful and in bad faith.

55. As a result of the Defendants' FMLA interference, Plaintiff has suffered damages including but not limited to past lost wages and interest on those wages, lost benefits, liquidated damages, front pay, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, loss of ordinary pleasures of everyday life, attorney fees, and costs.

WHEREFORE, the Plaintiff, BETH ADAIR, respectfully requests judgment against Defendants in an amount that will fully compensate her for her injuries and damages caused by the Defendants' violations of her rights under FMLA and award Plaintiff all allowable damages under the FMLA, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages,

compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT III
## RETALIATION/RETALIATORY DISCHARGE
### For Exercising Worker's Compensation Rights

56. Plaintiff repeats and reasserts the allegations of paragraphs 1-34 as this paragraph as though fully set forth herein.

57. At all relevant times, Plaintiff was employed as a teller and competently fulfilled her duties and was an exceptional employee.

58. Plaintiff sustained an injury while on the job on October 9, 2019 and exercised her rights by filing a worker's compensation claim on or about October 30, 2019.

59. After exercising her rights and filing a worker' compensation claim, Defendant's retaliated against Plaintiff's as described above.

60. On March 4, 2020, Plaintiff was wrongfully discharged from her employment with the Defendant.

61. The Plaintiff was discharged from her position on or about March 4, 2020 in retaliation and for exercising her rights and filing a worker's compensation claim.

62. After making the above-referenced complaints, Plaintiff was continually harassed in ways including but not limited to engaging in illegal acts of retaliation against Plaintiff, differential treatment toward Plaintiff, creation of a hostile work environment and termination.

63. In response to Plaintiff's intent to pursue her common law rights, she was discharged by the Defendant in violation of the common law prohibition of retaliatory discharge.

64. Defendants unlawfully discharged Plaintiff in violation of the clear mandate of public policy of her federally and state-protected rights to equal treatment in the workplace and pursuit of her rights under the Illinois Workers Compensation Act.

65. As a result of her discharge, Plaintiff suffered from damages including but not limited to loss of salary, wages, benefits, back pay, front pay, past and future pecuniary losses, prejudgment interest, severe emotional distress, loss of reputation, and other financial consideration as a result of her employment.

66. Defendant's actions were willful and wanton in nature and were conducted with the intended purpose of causing harm to Plaintiff. As such, Plaintiff is entitled to punitive damages and any other damages allowable under common law retaliation.

67. The actions of Defendants set forth above were the direct and proximate cause of the Plaintiff's discharge and resulting damages.

   WHEREFORE, Plaintiff prays that this Honorable Court enters judgment in her favor and against Defendants in an amount that will fully compensate her in excess of $50,000.00, along with costs associated with and incurred in this action, and for any other relief this Court deems just and proper.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68. Plaintiff repeats and reasserts the allegations of paragraphs 1-34 as though set forth fully herein for this paragraph.

69. Defendants' conduct by and through its agents and employees, as described above, was both extreme and outrageous to the point that it went beyond the bounds of decency, and it is to be regarded as intolerable in our society.

70. Defendants' conduct by and through its agents and employees, as described above, was intended to cause Plaintiff severe emotional distress or Defendants should have reasonably known that there was a high probability that this conduct would cause such distress to Plaintiff.

71. By the foregoing acts, Defendants by and through its agents and employees, caused Plaintiff severe emotional distress, including among other things, extreme anger, resentment, depression, worry, anxiety, and stress.

72. As a direct and proximate result of the acts engaged in by Defendants, Plaintiff suffered severe financial damages, including but not limited to loss of pay and benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment; exacerbation of her medical condition; damage to reputation; punitive, liquidated and other exemplary damages, attorney's fees, costs and other damages allowable.

73. Defendants' actions were intentional, willful, and wanton, and done with reckless disregard for Plaintiff's rights and to Plaintiff's physical well-being, so as to justify awarding punitive damages and exemplary damages in this case.

WHEREFORE, Plaintiff prays that this Honorable Court enters judgment in her favor and against Defendants, in an amount that will fully compensate her in excess of $50,000.00, along with costs associated with and incurred in this action, and for any other relief this Court deems just and proper.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff repeats and reasserts the allegations of paragraphs 1-34 as though set forth fully herein for this paragraph.

75. In the alternative, if Defendants' actions and behavior by and through its agents and employees is not found to be intentional, Defendants would still be liable under the doctrine of negligent infliction of emotional distress.

76. Defendants should have reasonably known that there was a high probability that this conduct by and through its agents and employees, as described above, would cause severe emotional distress to Plaintiff.

77. As a direct result of Defendants' behavior, Plaintiff did in fact suffer severe emotional and cognitive distress and outrage.

78. As a direct and proximate result of the acts engaged in by Defendants, Plaintiff suffered severe financial damages, including but not limited to loss of pay and benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment; exacerbation of his medical condition; damage to reputation; punitive, liquidated and other exemplary damages, attorney's fees, costs and other damages allowable.

WHEREFORE, Plaintiff prays that this Honorable Court enters judgment in her favor and against Defendants, in an amount that will fully compensate her in excess of $50,000.00, along with costs associated with and incurred in this action, and for any other relief this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

**BETH ADAIR**

By**:** /s/John C. Kreamer
One of Plaintiffs' Attorneys

John C. Kreamer (627011)
Joseph E. Urani (6278626)
Kreamer Law Group, LLC
1100 E. Warrenville Road, Ste. 135
Naperville, Illinois 60563
T. (630) 995-3668
F. (630)597-9532
Email: jckreamer@kreamerlawgroup.com
 joe.urani@kreamerlawgroup.com