IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BETH ADAIR,<br><br>  Plaintiff,<br><br> vs.<br><br> MORTON COMMUNITY BANK and HOMETOWN COMMUNITY BANKS,<br><br>  Defendants. | Case No. 22-cv-2053 |

**DEFENDANTS' MOTION TO RECONSIDER THE COURT'S DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT 8 OF PLAINTIFF'S AMENDED COMPLAINT**

Now come Defendants, MORTON COMMUNITY BANK and HOMETOWN COMMUNITY BANCORP INC. (incorrectly named as HOMETOWN COMMUNITY BANKS), by their attorneys, QUINN JOHNSTON, and for their Motion to Reconsider the Court's Denial of Defendants' Motion for Summary Judgment on Count 8 of Plaintiff's Amended Complaint, state as follows:

## I. BACKGROUND

Following the dismissal of Counts 4 and 5 of Plaintiff's Amended Complaint, which asserted claims for the intentional and negligent infliction of emotional distress respectively [*See* Doc. 34], there remained 12 claims against the Defendants alleging: FMLA Interference (Count 1), FMLA Discrimination (Count 2), Retaliatory Discharge under the Illinois Workers' Compensation Act (IWCA) (Count 3), ADA Discrimination (Count VI), ADA Denial of Accommodations (Count VII), ADA Retaliation (Count 8), IHRA Disability Discrimination (Count 9), ADEA Discrimination (Count 10), ADEA Retaliation (Count 11), IHRA Age

Discrimination (Count 12), IHRA Retaliation (Count 13), and Hostile Work Environment (Count 14). [*See* Doc. 55 at 7]

After the close of discovery, Defendants moved for summary judgment on each of the remaining 12 Counts in Plaintiff's Complaint on March 5, 2024. [Doc. 43.] By its 63-page Order and Opinion filed on February 26, 2025, the Court granted Defendants' Motion for Summary Judgment as to Counts 1, 2, 3, 6, 7, 9, 10, 11, 12, 13, and 14, but denied Defendant's Motion as to Count 8 claiming Retaliation in violation of the ADA. [*See* Doc. 55 at 47-48] Defendants' now request this Court to reconsider its denial of Defendants' Motion for Summary Judgment as to Count 8.

Count 8 of Plaintiff's Amended Complaint alleges that the Defendants retaliated against Plaintiff in violation of the ADA. Notably, in pleading Count 8, the Plaintiff first incorporated the common allegations set forth in paragraphs 1 through 36 of the Amended Complaint, which also related to, and were incorporated into, Plaintiff's discrimination and retaliation claims brought under the FMLA, ADEA, ADA (discrimination and failure to accommodate), IHRA, Title VII, and for hostile work environment. After incorporating these common allegations, Plaintiff proceeded to conclude, without specific allegations of fact in support, that she engaged in protected activity, including requesting reasonable accommodations for her disability, and that Defendant retaliated against her in violation of the ADA by engaging in "illegal acts of retaliation" which allegedly included differential treatment and termination, and the failure to engage in any interactive process to discuss potential reasonable accommodations. [Doc. 43-1 at 13]

The common thread woven among all of Defendants' arguments in their Motion for Summary Judgment focused on the undisputed fact that, following her physician's imposition of a 5-pound lifting restriction upon her while at work, and later, restricting Plaintiff from working at

all, the Plaintiff was physically unable to perform the essential functions of her job and the accommodations she proposed were either unreasonable or would not have allowed her to perform the essential functions of her bank teller job in light of her own medical restrictions. Quite simply, because the Plaintiff was unable to perform the essential functions of her position either with or without a reasonable accommodation—the Defendants argued, among other things, that the Plaintiff was not a "qualified individual with a disability" entitled to any of the protections of the ADA in the first instance, and accordingly the Plaintiff could not establish an ADA violation (or disability discrimination under the IHRA). Moreover, because Plaintiff was unable to work (or perform the essential functions of her job with or without an accommodation), the Plaintiff also could not show that the Defendants' decision to place her on FMLA leave violated the FMLA's discrimination or interference prohibitions. Therefore, after having already addressed Plaintiff's inability to show that she was discriminated or retaliated against under any of the theories alleged in the other 11 Counts of Plaintiff's Amended Complaint, each of which overwhelmingly focused upon the Plaintiff's physical inability to perform the essential functions of her job, Defendants argued in their Motion for Summary Judgment that the Plaintiff also failed to establish any dispute of fact sufficient to maintain her ADA retaliation claim:

> The undisputed facts of this case make it clear that the Plaintiff cannot establish that she was a qualified individual under the ADA in December of 2019, when Dr. Bell submitted his Certification form stating that Plaintiff was unable to perform the functions of her job and, further, was unable to lift more than 5 pounds. [DSOF 92]. The job description for the teller position held by Plaintiff at MCB expressly sets out the essential duties and functions of the teller position, including the physical demands of the position, and require that a teller be able to engage in repetitive motions, and lift more than 50 pounds occasionally, 20 pounds frequently, and 10 pounds constantly. [DSOF 14–17, 18–22]. Because Plaintiff was unable to perform the essential functions of her job with or without an accommodation as of December 10, 2019, when Dr. Bell provided his Certification stating such, Plaintiff was not and is not a "qualified individual" under the ADA and her claims for disability discrimination and retaliation in Counts 6, 7, 8 and 9 of the Amended Complaint fail as a matter of law.

[Doc. 43 at 49–50]

In her response, Plaintiff argued "Defendant only addresses Plaintiff's failure to accommodate claim under the ADA in Count 7 and does not directly address Counts 6, 8 and 9 specifically, and those arguments should be deemed waived as well." [Doc. 49 at 83–84]. In their Reply, the Defendants addressed Plaintiff's disingenuous "waiver" argument and explained why it lacked any merit:

> To the contrary, after noting Plaintiff's claims for disability discrimination under federal law (the ADA) and state law (the IHRA) are analyzed under the same framework, Defendant addressed the essential element common to each of the claims—that she could not perform the essential functions of her job with or without reasonable accommodations—and argued she could not establish this element in light of Dr. Bell's 5-pound lifting restriction. [Doc. 43 at 45–50]. Therefore, Defendant has clearly not waived its arguments with respect to Counts 6, 8, and 9. Further, Plaintiff cannot establish a dispute of fact as to whether she could perform the essential functions of the teller position. Again, as discussed at length above, after Dr. Bell imposed a 5-pound lifting restriction on December 11, 2019, Plaintiff was unable to perform the essential functions of a bank teller. Likewise, Plaintiff's assertion that she received the same accommodations prior to her fall that she was requesting after her fall is not supported by the evidence of record in this case.

Doc. 51 at 37–38.

In that part of its Order denying Defendants' Motion for Summary Judgment on the ADA retaliation claim (Count 8), the Court grouped all of Plaintiff's retaliation claims under the IWCA, ADEA, IHRA, and ADA together, before stating:

> As the Court noted above, Plaintiff alleges that Defendants retaliated against her on the basis of her disability when her employment was terminated. (Doc. 24 at 13). In seeking summary judgment on all counts of Plaintiff's Amended Complaint, Defendants specifically state that "her claim[] for disability . . . retaliation" contained in Count VIII fails as a matter of law. (Doc. 43 at 50). However, Defendants only address the theories of failure to accommodate and discrimination under the ADA. (See doc. 43 at 45–50). They seemingly argue that because Plaintiff is not a qualified individual under the ADA, all of her related claims fail; although, this argument does not adequately address the retaliation claim, as a plaintiff need not establish that she is a qualified individual to proceed. *See Squibb*

4

> *v. Mem'l Med. Ctr.*, 497 F.3d 775, 786–88 (7th Cir. 2007) (outlining the elements of ADA retaliation under the direct and indirect methods of proof). Actions like requesting accommodations are protected activities that can be sufficient to support a claim of retaliation under the ADA; thus, whether someone is a "qualified individual" is not an element of the analysis.
>
> So to return to the language of the relevant provision, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [it]." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation, a "plaintiff must prove that [she] engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Because Defendants fail to meaningfully address the retaliation claim, and their overarching argument related to Plaintiff's status as a qualified individual is rejected, the Court cannot grant summary judgment on Count VIII. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying *each claim or defense*—or the part of each claim or defense—on which summary judgment is sought.

[Doc. 55 at 47–48].

For the reasons set forth below, Defendants now seeks reconsideration of the Court's denial of its Motion for Summary Judgment on Count 8.

## LEGAL STANDARD

The denial of a motion for summary judgment constitutes an interlocutory order; thus, the Court may entertain a motion to reconsider the denial of summary judgment at any time while this litigation is pending. *U.S. for Use & Ben. of A. Hollow Metal Warehouse, Inc. v. U.S. Fid. & Guar. Co.*, 700 F. Supp. 410, 411–12 (N.D. Ill. 1988). A motion to reconsider should be granted where the movant shows "that the court committed a manifest error of law or fact[.] *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). "Disposition of a motion for reconsideration is left to the discretion of the district court, and its ruling will not be reversed absent an abuse of that discretion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citing *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir. 1991)).

**ARGUMENT**

This Court should reconsider the February 26, 2025 Order denying summary judgment in favor of Defendants as to Plaintiff's ADA retaliation claim. First, the Court's basis for the denial with respect to Count 8 clearly evinces "a manifest error of law or fact." *Cincinnati Life Ins. Co.*, 722 F.3d at 954. Defendants' argument as to Plaintiff's ADA retaliation claim focused on the undisputed fact that the Plaintiff was entirely unable to work, and therefore unable to perform any of the essential functions of her job at the time she was terminated (which was also at the very same time that Plaintiff exhausted her FMLA leave). It was the inability of Plaintiff to perform her job which was the basis for her termination. [*See*, Doc. 43 at 49] Because Plaintiff's termination was the only adverse employment action she allegedly suffered, and the undisputed basis for her termination was her inability to return to work when her FMLA leave ran out, the Plaintiff's ADA retaliation must by necessity also fail because she cannot establish that Defendants' reason for terminating Plaintiff (her inability to return to work after exhausting her FMLA leave) was in any manner retaliatory.

Second, the Court should reconsider the denial of summary judgment on this claim for reasons of judicial economy, because, should this case proceed to trial on the lone remaining claim of ADA retaliation, in light of the Court's extensive analysis and findings as to Plaintiff's other 11 claims the Defendants would be entitled to a directed verdict in its favor at the conclusion of Plaintiff's case in chief. In short, the Court's February 26, 2025 Order already made each of the findings necessary to grant summary judgment to Defendants on Plaintiff's ADA retaliation claim, and the Court should not wait until halfway through trial to revisit the issue.

**(1) The Court's Basis for Denial Evinced a Manifest Error of Law or Fact.**

To begin, as part of its analysis of the Plaintiff's ADA retaliation claim, the Court appears to cite with favor to the opinion in *Squibb v. Mem'l Med. Ctr.,* 497 F.3d 775, 786-788 (7th Cir. 2007) as support for the Court's position that a plaintiff need not establish that she is a qualified individual under the ADA in order to state a claim for ADA retaliation. [*See*, Doc. 55 at 47-48] However, a closer look at the Seventh Circuit's opinion in *Squibb* reveals that the Court does not in fact hold that whether someone is a qualified individual is not an element of the analysis of a retaliation claim – rather the Seventh Circuit's opinion in *Squibb* simply recites the *prima facie* elements of an ADA retaliation claim under both the direct and indirect methods of proof (which do not make reference to a "qualified individual"). To establish a *prima facie* case of retaliation under the indirect method, "a plaintiff must demonstrate: "(1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007). Under the direct method, a "plaintiff must prove that [she] engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." [*See* Doc. 55 at 48] (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). Although neither the direct nor the indirect method uses the term "qualified individual" in setting out the elements of a retaliation claim, when the definition of a "qualified individual" is considered alongside the indirect method's third prong (that plaintiff was performing her job satisfactorily) it becomes more apparent that whether one argues that the plaintiff is not a "qualified individual" as opposed to arguing that the "plaintiff was not satisfactorily performing her job" is more about semantics than substance.

7

As specifically noted by the Court in its analysis of Plaintiff's ADA discrimination and failure to accommodate claims, when addressing a claim of ADA discrimination a court must consider at the start consider whether the plaintiff is a "qualified individual" within the meaning of the ADA (and the ADA defines a "qualified individual" as one who can perform the essential functions of their employment position with or without reasonable accommodations). [*See*, Doc. 55 at 12-13]. Understanding that under the indirect method of establishing a claim of retaliation (described above), the plaintiff must establish that she was performing her the job satisfactorily at the time she was subjected to an adverse employment action, *See* Doc. 55 at 48, it seems obvious that to the extent that a plaintiff was not a "qualified individual" under the ADA (meaning she was unable to perform the essential functions of her job with or without a reasonable accommodation), then said plaintiff could not establish a claim of ADA retaliation as the plaintiff could not establish the third prong – that she was performing her job satisfactorily. Given that the Court already found that Plaintiff (Adair) was <u>not</u> a "qualified individual" under the ADA because Plaintiff was unable to perform the essential functions of her job with or without reasonable accommodations, *See* Doc. 55 at 21-25, the Plaintiff cannot establish any claim for ADA retaliation under the indirect method as an individual cannot be unable to perform the essential functions of the job at the same time they are performing the job satisfactorily – it is logically inconsistent and factually impossible.

Setting aside for a moment the question of which method of proof is applied by the Court, Plaintiff's claim of retaliation fails as a matter of law for a number of other reasons as well. Plaintiff's ADA retaliation claim was based upon allegations that Defendants denied her accommodation requests, treated her differently than other employees similarly situated, and terminated her because of her exercise of rights under the ADA. [Doc. 43 at 46] But given that the Court has already found that Plaintiff's requested accommodations were not reasonable to

8

begin with, Doc. 55 at 23, the Plaintiff cannot maintain a retaliation claim based upon these unreasonable requests. Further, a failure to accommodate claim cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim." *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037–38 (N.D. Ill. 2016) (collecting cases).

Plaintiff also cannot maintain her retaliation claim based upon any alleged differential treatment. To be sure, the exact conduct alleged to support her claim of differential treatment is far from clear, both due to the conclusory manner in which she pleaded her claim and the repackaging of the same allegations in support of almost all of her 12 claims. *Cf. Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) ("*The nonmoving party* bears the responsibility of identifying the evidence upon which [s]he relies.") (emphasis added). Nonetheless, in their motion, Defendants identified the instances Plaintiff appeared to assert she was retaliated against: Moline for not letting her change jobs; Figge and McGraw when they placed her in FMLA leave and later denied her FMLA extension request and terminated her; and for filing an workers' compensation claim and requesting accommodations. Doc. 43 at 29 (DSOF 127). Plaintiff did not dispute this statement of fact. Doc. 49 at 51.

Plaintiff's claim that Moline retaliated against her by not letter her change jobs was rejected by the Court (Doc. 55 at 22, fn. 11, 36), as were her claims based on placing her on FMLA leave (Doc. 55 at 30–31, 38), and denying her an FMLA extension and terminating her (Doc. 55 at 24–25, 34, 38–39). It also rejected Plaintiff's retaliation claim based upon filing a workers' compensation claim, (Doc. 55 at 51), and found her proposed accommodations unreasonable in part because she could not perform the essential functions of her job (Doc. 55 at 22–23). Moreover, the Court also found any differential treatment she received was unrelated to her disability entirely:

9

"[w]hile Plaintiff complains that Hoffman was constantly checking the accuracy of her work was due to her age or *disability*, the record shows otherwise [examples omitted] all of which undermine a contention that a genuine issue of material fact exists that establishes that Plaintiff was singled out because of her age *or disability*." Doc. 55 at 59–60 (emphasis added).

Likewise, Plaintiff cannot maintain her retaliation claim based upon her termination. Again, the Court has already found Plaintiff's termination was not retaliatory, but rather was due to her inability to return to work following the expiration of her FMLA leave:

> Plaintiff has not offered any additional facts; instead, only argument that is unsupported by caselaw or testimony. It is undisputed that Plaintiff's required twelve weeks of FMLA leave expired on March 3, 2020, and that she was unable to return to work for at least two to four weeks. (Doc. 43-1 at 133). Further, it is undisputed that McGraw testified that Plaintiff's termination decision was based on the expiration of her leave time in light of the hardship her continued absence from work was causing Defendants and the lack of assurance she would be able to return any time soon. (Doc. 43-17 at 17–19). Based on these circumstances, Plaintiff can neither make a claim that her FMLA rights were violated nor that Defendants retaliated against her for exercising rights protected under the statute.

[Doc. 55 at 40]; *See also* Doc. 55 at 53 ("Plaintiff's termination decision was made by McGraw, who had final authority to approve or deny Plaintiff's request for an FMLA leave extension and terminate her employment at MCB. It is also undisputed that Figge called Plaintiff to inform her that she was being terminated because MCB did not have a return-to-work date."). Moreover, the failure to reinstate an employee on FMLA leave, when the employee remains unable to work is not an adverse employment action at all. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015). Indeed, terminating an employee because of her inability to perform an essential function of her job is a legitimate, non-retaliatory employment action. *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017) ("Stevens' retaliation claim necessarily fails because Stevens' inability to perform an essential function of his job was a legitimate, non-retaliatory reason for his discharge.").

10

Plaintiff's ADA retaliation claim fares even worse under the indirect method of proof. Under that framework, Plaintiff had to show she was meeting her employer's legitimate expectations; *i.e.*, that she was performing her job satisfactorily. *Squibb*, 497 F.3d at 788; *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 602 (7th Cir. 2011) ("For a valid discrimination and retaliation claim under the ADA, an employee must show that he was meeting his employer's legitimate employment expectations, and that he was performing his job satisfactorily."). Plaintiff cannot meet her burden of establishing she met her employer's legitimate expectations or was performing her job satisfactorily because she could not perform the essential functions of her job with a 5-pound lifting restriction and she could not perform her job at all when she was under a total restriction from working. Once again, the Court has already undertaken the relevant analysis:

> But she could not perform the essential functions of her job when she requested "a short extension of leave" or later, when she was terminated. (Doc. 49 at 47). In fact, Plaintiff's own doctor concluded she could not perform her job, with or without a reasonable accommodation. (Doc. 49 at 47).

Doc. 55 at 24.

> It is undisputed that Plaintiff's required twelve weeks of FMLA leave expired on March 3, 2020, and that she was unable to return to work for at least two to four weeks. (Doc. 43-1 at 133). Further, it is undisputed that McGraw testified that Plaintiff's termination decision was based on the expiration of her leave time in light of the hardship her continued absence from work was causing Defendants and the lack of assurance she would be able to return any time soon. (Doc. 43-17 at 17–19). Based on these circumstances, Plaintiff can neither make a claim that her FMLA rights were violated nor that Defendants retaliated against her for exercising rights protected under the statute.

*Id*. at 40.

> Finally, even if the Court were to assume that Plaintiff has made out a prima facie case, she fails to prove that the Defendants' explanation for her termination is pretextual.

*Id*. at 45.

11

> Likewise, Plaintiff has failed to show a genuine dispute that she met her employer's legitimate expectations. In other words, as discussed thoroughly below, Plaintiff's work needed to be checked not because of her age but because her performance needed improving—as evidenced by her acknowledging that she had discrepancies in her work product. (Doc. 49 at 13–19).

*Id*. at 56.

> In considering the totality, in connection with the absence of evidence suggesting that Hoffman was animated with retaliatory animus, the factors tip strongly against Plaintiff. To be sure, Plaintiff was not physically threatened or humiliated, and much of the "interference" with her job was, as discussed above, reasonable: it stemmed from her own failure to meet legitimate employment expectations.

*Id*. at 58.

In sum, the Court's stated basis for denying summary judgment on Plaintiff's ADA retaliation claim was doubly flawed. First, while the Court was correct that generally a plaintiff alleging retaliation under the ADA need not establish she is a qualified individual to maintain her claim (Doc. 55 at 48), Defendants' argument was that the *reason* Plaintiff was not a qualified individual—she could no longer perform her job—was also undisputably the *reason* she was terminated. Doc. 43 at 49–50. Thus, whether assessed under the causation prong of the direct method, or the legitimate expectations/adequate performance prong of the indirect method, Plaintiff failed to establish a factual dispute necessary to avoid summary judgment on her ADA retaliation claim.

Second, the Court's remark that Defendants failed to meaningfully address Plaintiff's ADA retaliation claim demonstrates an overly-myopic view of the summary judgment briefing. Defendants addressed Plaintiff's myriad of repetitive retaliation claims *ad nauseum*, raising the same common thread in each. By the 46th page of its brief, Defendants understandably sought to be concise rather than regurgitate the same analysis it had conducted multiple times with respect to Plaintiff's other retaliation claims. And on each of those other claims, the Court agreed. *See*

12

Doc. 55 at 38 ("The Court agrees that Plaintiff has failed to present evidence to establish a valid retaliation claim under the FMLA."); *id*. at 45 ("Finally, even if the Court were to assume that Plaintiff has made out a prima facie case, she fails to prove that the Defendants' explanation for her termination is pretextual."); *id*. at 51 ("This argument alone is a nail in the coffin for Plaintiff's IWCA claim—an employee exhausting their leave under the FMLA is not causally related to, or indicative of, an employer's pretextual motive in discharging an employee out of retaliation for filing a worker's compensation claim."); *id*. at 58 ("In considering the totality, in connection with the absence of evidence suggesting that Hoffman was animated with retaliatory animus, the factors tip strongly against Plaintiff."); *id*. at 59 ("…all of which undermine a contention that a genuine issue of material fact exists that establishes that Plaintiff was singled out because of her age or disability."); *id*. at 59 ("Plainly, Plaintiff has failed to introduce any evidence that these incidents constituted harassment on the basis of a perceived disability.")

**(2) Judicial Economy Supports Reconsideration of the Denial of Summary Judgment.**

If this case proceeded to trial on Plaintiff's ADA retaliation claim, Defendants would be entitled to a directed verdict in its favor at the conclusion of Plaintiff's case in chief. As discussed above, the Court already made each of the findings necessary to grant summary judgment to Defendants on Plaintiff's ADA retaliation claim. It has already established no dispute of fact exists that Plaintiff's employment was terminated due to her inability to return to work. It has already found an absence of evidence her supervisor acted with discriminatory animus. And it has already found the differential treatment alleged was due to her deficient job performance and not because of her disability or the exercise of her rights under the ADA, FMLA, IWCA, ADEA, Title VII, or IHRA.

Although the Court largely focused on the direct and indirect methods of proof, ultimately the standard is whether the evidence as a whole would permit a reasonable factfinder to conclude that Plaintiff's protected activity caused her discharge or adverse action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court has already found no reasonable factfinder could decide Plaintiff's termination was motivated by anything other than her inability to work following the expiration of her FMLA leave. A jury should not be forced to hear Plaintiff's case in chief when a directed verdict is inevitable. Accordingly, the Court should grant Defendants' Motion to Reconsider and amend its February 26, 2025 order to grant Defendants summary judgment on Count 8 of Plaintiff's Amended Complaint.

WHEREFORE, Defendants, MORTON COMMUNITY BANK and HOMETOWN COMMUNITY BANCORP INC. (incorrectly named as HOMETOWN COMMUNITY BANKS), pray this Court grant their Motion to Reconsider, and enter summary judgment in favor of Defendants and against Plaintiff on Count 8 of Plaintiff's Amended Complaint.

>                MORTON COMMUNITY BANK and
>                HOMETOWN COMMUNITY BANCORP INC.
>                (incorrectly named as HOMETOWN
>                COMMUNITY BANKS, Defendants
>
> By:   /s/ Stephen M. Buck
>                QUINN JOHNSTON

Stephen M. Buck – ARDC No. 6209958
Samuel J. Perkins – ARDC No. 6321283
QUINN JOHNSTON
227 N.E. Jefferson Avenue
Peoria, IL  61602
Telephone: (309) 674-1133
Facsimile:  (309) 674-6503
Email:  sbuck@quinnjohnston.com
          sperkins@quinnjohnston.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2025, I electronically filed the foregoing **Defendants' Motion to Reconsider the Court's Denial of Defendants' Motion for Summary Judgment on Count 8 of Plaintiff's Amended Complaint** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

    John C. Kreamer
    Joseph E. Urani
    jckreamer@kreamerlawgroup.com
    joe.urani@kreamerlawgroup.com

    *s/ Stephen M. Buck*
    Stephen M. Buck – ARDC No. 6209958
    Samuel J. Perkins – ARDC No. 6321283
    QUINN JOHNSTON
    227 N.E. Jefferson Avenue
    Peoria, IL 61602
    Telephone: (309) 674-1133
    Facsimile: (309) 674-6503
    Email: sbuck@quinnjohnston.com
           sperkins@quinnjohnston.com

4898-1242-6785, v. 2